■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v NIKOLAUS CATRUNA, Appellant.—Appeal from a judgment of the County Court, Albany County, entered January 31, 1977, upon a verdict convicting defendant of the crime of grand larceny in the second degree. Defendant's conviction was based upon larceny by false promise under section 155.05 (subd 2, par [d]) of the Penal Law. Defendant was found guilty and was sentenced to an indeterminate term of imprisonment not to exceed five years. The issue presented here is whether the prosecution has met its burden of proving the elements of the crime and, more especially, the requirement of the specifically defined intent as limited and mandated by section 155.05 (subd 2, par [d]) of the Penal Law. A conviction for the crime of larceny by false promise upon proof of nonperformance alone cannot stand even though failure to perform is substantial evidence of a larcenous intent. The necessary intent

must rest "upon evidence establishing that the facts and circumstances of the case are * * * wholly inconsistent with innocent intent or belief, and excluding to a moral certainty every hypothesis except that of the defendant's intention or belief that the promise would not be performed" (Penal Law, § 155.05, subd 2, par [d]). The defendant's intention not to perform the promise was sufficiently established by the following facts and circumstances presented at the trial. Defendant borrowed $25,000 from Delbert Fish in December, 1973 and January, 1974. The victim was uneducated and almost totally illiterate, as counterposed to defendant who was articulate, experienced in the pharmacy business and educated. To entice Fish to part with his money, defendant made a promise to Fish to make him "chief of security" of his warehouse and plant which defendant claimed he was going to relocate in Albany from Long Island with the borrowed money. The fact was that he had no such facility. He encouraged Fish in the expectation of such a job by the ruse of looking at various plants with him and ordering the real estate agent, in Fish's presence, to commence purchase negotiations with the owner. He thereafter failed to answer calls from the real estate agent made in pursuance of this order. Fish was sent out on other real estate surveys and told to report back by the defendant. He was encouraged, also, to look into the purchase of security equipment. The defendant, thereafter, took no action on these errands he assigned to Fish. The defendant had, also, on two prior occasions borrowed money from others under the pretext of relocating his nonexistent warehouse. The circumstances under which he secured the money from the unsophisticated Fish were fraught with other exaggerations. He told Fish and Fish's mother that he was a pharmacist, that he owned one local drugstore and other drugstores elsewhere. He also promised a 20% return on the loan. While successfully engineering the loans from Fish, his financial situation was chaotic and hopelessly desperate. He had made some $100,000 in loans in the period immediately preceding his negotiations with Fish and he had defaulted on most of his personal and business loans before the Fish encounter. He had inveigled one man to make loans on his behalf from a bank which had previously declined to lend the defendant money. All the loans made by him were accompanied by guarantees of high interest yields, 20 to 30%, and exaggerations as to his background, ownership of drug franchises and a warehouse. The record is mute as to how these vast amounts of money he borrowed were spent. The moneys were not used to satisfy his lenders as he defaulted on most of his obligations. His projects never came into being. He failed to open even one franchise drugstore and his plans for a drug insurance program never progressed from the most rudimentary level. He, also, never purchased the warehouse for which he had borrowed on three occasions. Although defendant claimed he re-invested the moneys in his business enterprises, this testimony was based on his word alone. He was unable to produce one business record in support of his statement. He claimed his records were stolen from his car or disposed of by his landlady. The defendant denied any misrepresentations and said that Fish, Fish's mother and others from whom he borrowed money misunderstood his statements. The jury obviously did not believe defendant's version of the transactions with Fish. It concluded that Fish's version was accurate. The evidence supports the conclusion that the defendant made a false promise to Fish and conned him into parting with his money. The evidence, on the other hand, belies the inference of an innocent, bumbling businessman who merely overestimated his business possibilities and intended to pay but for the financial reverses which befell him. The quality of

evidence supports the test of legal sufficiency set out in *People v Ryan* (41 NY2d 634). The defendant contends further that the court erred in allowing testimony as to numerous other loans the defendant made just prior to the Fish loan. We hold otherwise. These were germane to the issue of intention to perform the promises which induced Fish to make the loans and were properly admitted. They were relevant and bore directly on the circumstances in which defendant found himself and, on whether, considering them, it could be concluded that he intended to repay Fish. It is defendant's contention that the trial court erred in its charge in two areas: the standard of proof and in failing to charge usury. We find this without merit. Defendant has waived any objection to the charge in failing to except to it (CPL 470.05, subd 2). Defendant urges that the sentence imposed is excessive. When viewed in the light of the great harm perpetrated on the victim, it is more than justified and should not be disturbed. Judgment affirmed. Sweeney, J. P., Mahoney, Main, Larkin and Mikoll, JJ., concur.